UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re:

Craig W. Schneider and Melinda T. Schneider,

                                 Debtors.
----------------------------------------------------------X
In re:

Norman Kurbis *aka* Norman N. Kurbis and
Coreen Kurbis *aka* Coreen M. Kurbis
*aka* Coreen C. Kurbis *aka* Coreen Mary Kurbis
*aka* Coreen M. Capuano,

                                  Debtors.
----------------------------------------------------------X

    Case No.: 12-77005-ast
    Chapter 13

    Case No.: 13-70791-ast
    Chapter 13

### DECISION AND ORDER
### <u>DENYING MOTIONS SEEKING TO AVOID JUDICIAL LIENS</u>

    Pending before the Court in these two cases are motions pursuant to 11 U.S.C. § 522(f)[1]

seeking to avoid one or more judicial liens against the debtors' principal residences (together, the

"Motions").  In each of these cases, the debtors either failed to actually claim a homestead

exemption in an amount sufficient to avoid the judicial liens and/or failed to file a properly

pleaded § 522(f) motion.  Because this Court concludes that a debtor must (1) actually claim a

homestead exemption in his or her principal residence (2) in a dollar amount certain on Schedule

C[2] greater than $0.00, and (3) must plead in the § 522(f) motion the amount of the homestead

exemption actually claimed, each of the pending Motions  should be denied.

---

[1] Unless otherwise indicated, all statutory references are to the "Bankruptcy Code," 11 U.S.C. §§ 101, *et seq.*

[2] All references to "Schedule C" are to Federal Rule of Bankruptcy Procedure Official Form 6C.

<u>**JURISDICTION**</u>

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 1334(a) and (e), and 157(b)(2)(A), (K), and (O), and the Standing Orders of Reference in effect in the Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012, but made effective *nunc pro tunc* as of June 23, 2011.

<u>**BACKGROUND AND PROCEDURAL HISTORY**</u>

**A.     The Schneider Motion**

On December 4, 2012, Craig W. Schneider and Melinda T. Schneider (the "Schneiders") filed a Chapter 13 petition.[3]  On Schedule A, the Schneiders listed an interest in real property located at 10 Hopes Avenue, Holtsville, New York (the "Schneider Property"), valued at $330,000.00 and subject to a first mortgage lien held by Bank of America Home Loans with a balance due of $392,909.45 and a second mortgage lien held by HSBC Finance Corporation with a balance due of $74,471.26.  On Schedule C, the Schneiders did not claim a homestead exemption in the Schneider Property.

On February 22, 2013, the Schneiders filed an Amended Schedule C on which they claimed a $100.00 federal homestead exemption in the Schneider Property.  Importantly, to date, the Schneiders have not filed proof of service of their Amended Schedule C.

Also on February 22, the Schneiders filed a motion (the "Schneider Motion") to avoid the fixing of the judicial lien of Slomin's, Inc., which was recorded against the Schneider Property on or about September 27, 2011, in the approximate sum of $2,277.04 (the "Slomin's Judicial Lien").  According to the Schneider Motion, the Schneiders "are entitled to a $300,000.00 homestead exemption on their residence" under applicable New York law, even though, as noted

---

[3] Case No. 12-77005-ast [dkt item 1]. On August 22, 2013, the Court entered an Order confirming the Schneiders' proposed Second Amended Chapter 13 Plan. [dkt item 34]

above, the Schneiders actually claimed a $100.00 federal homestead exemption in the Schneider Property, not a New York homestead exemption.  Schneider Motion at ¶ 8.  The Schneider Motion was served on counsel for Slomin's, and no objection was filed.[4]

The issues in the Schneiders' case are two-fold: first, the Schneiders failed to file proof of service of their Amended Schedule C; second, the Schneider Motion fails to properly plead the amount of the homestead exemption actually claimed by the Schneiders.

**B.      The Kurbis Motion**

On February 19, 2013, Norman Kurbis and Coreen Kurbis (the "Kurbises" and together with the Schneiders, the "Debtors") filed a Chapter 7 petition.[5]  On Schedule A, the Kurbises listed an interest in real property located at 2 Taft Avenue, Islip, New York (the "Kurbis Property"), valued at $286,000.00 and subject to a mortgage lien held by Bank of America Home Loans with a balance due of $311,225.13.  On Schedule C, the Kurbises claimed a combined $100.00 federal homestead exemption in the Kurbis Property.

On March 13, 2013, the Kurbises filed a motion (the "Kurbis Motion" and together with the Schneider Motion, the "Motions") to avoid the fixing of the judicial lien of Citibank South Dakota, N.A. ("Citibank"), which was recorded against the Kurbis Property on October 29, 2012, in the approximate sum of $7,357.67 plus fees and costs (the "Citibank Judicial Lien"). The Kurbis Motion states that "[a]t the time of the filing, the [Kurbises] were entitled to a $43,250.00 homestead exemption on their residence, pursuant to Bankruptcy Code §522 (b)." Kurbis Motion at ¶ 8.  However, as noted above, the Kurbises actually claimed a $100.00

---

[4] On January 15, 2013, the Schneiders filed a prior § 522(f) motion and served it on Slomin's, Inc. Case No. 12-77005-ast [dkt item 17] Because the Schneiders had failed to claim a homestead exemption, on February 19, 2013, this Court entered an Order denying the Schneiders' prior § 522(f) motion without prejudice. [dkt item 19]

[5] Case No. 13-70791-ast [dkt item 1]. On May 29, 2013, the Kurbises received a Chapter 7 discharge. [dkt item 14]

combined federal homestead exemption in the Kurbis Property.  The Kurbis Motion was served on Citibank, and no opposition was filed.

The issue in the Kurbises' case is that, although there is no equity in the Kurbis Property to which the Citibank Judicial Lien may attach, and although the Kurbises actually claimed a homestead exemption, the Kurbis Motion incorrectly states the amount of the homestead exemption that the Kurbises actually claimed.

## C.    Debtors' Arguments

On April 3, 2013, this Court issued an Order Setting Briefing Schedule and Scheduling Hearings (the "Briefing Schedule Order") in each of these cases which directed Debtors to file a brief in support of their respective Motions by April 24, 2013, and scheduled an omnibus oral argument hearing for May 21, 2013 (the "Omnibus Hearing") [6] to address the following questions of law:

- Whether a debtor must actually claim a homestead exemption under § 522(l) and FED. R. BANKR. P. 4003(a) to avoid the fixing of a judicial lien under § 522(f);

- If a debtor is not required to actually claim a homestead exemption in order to utilize the avoidance provisions of § 522(f), what impact that has on the exemptions the debtor has actually claimed;

- Whether, and to what extent, a debtor can avoid a judicial lien under § 522(f) when there is equity in the debtor's principal residence beyond the amount of the debtor's actually claimed homestead exemption; and

---

[6] Originally, a total of seven § 522(f) motions were pending before this Court, including the two Motions addressed herein, which all presented similar issues. In June and July 2013, after the Omnibus Hearing, the debtors in cases 10-78118-ast (Fatemeh Sepanlou), 11-75151-ast (Steven Liesau) and 12-76943-ast (Mark Carlson and Mary Carlson) filed Amended Schedules and amended § 522(f) motions and were granted relief consistent with this Decision and Order. *See* Case No. 11-75151-ast dkt item 33 (entered June 27, 2013); Case No. 12-76943-ast dkt item 58 (entered Aug. 6, 2013); Case No. 10-78118-ast dkt item 26 (entered July 15, 2013).  Thereafter, on August 20, 2013, while these matters were under submission with the Court, the debtors in cases number 12-76915-ast (Dennis M. Friel and Lisa M. Friel) and 13-70930-ast (Jesus McGuire) withdrew their pending motions and filed Amended Schedules and amended § 522(f) motions; the Court granted the amended §522(f) motions consistent with this Decision and Order. *See* Case No. 12-76915-ast dkt item 24 (entered Sep. 24, 2013); Case No. 13-70930-ast dkt item 22 (entered September 20, 2013). Accordingly, this Decision and Order only addresses the Motions filed in the above captioned cases.

- Whether the Court can grant a debtor relief under § 522(f) when the debtor's motion asserts a different homestead exemption and/or amount than the exemption and/or amount debtor actually claimed on Schedule C.

On April 24, 2013, the Schneiders and the Kurbises, by common counsel, filed a joint Preliminary Statement in support of their Motions (the "Brief").[7]  In their Brief, Debtors acknowledge that case law is split on whether a debtor must actually claim a homestead exemption, but assert that "[t]he debtor need not claim an exemption as a precondition of voiding a judicial lien on the basis that the lien impairs the exemption. Section 522 does not focus on the actual claim of exemption but rather on the hypothetical exemption that the debtor would have been entitled to in the absence of the lien."  Brief at p. 3.  Thus, Debtors argue that "[w]hen no equity is present, there is no need to claim a homestead exemption and the debtor can avail himself to either the N.Y. State or Federal exemptions."  *Id.* at p. 4.  On the other hand, Debtors assert that if there is equity in the debtor's principal residence, a judicial lien "only survives to the extent that debtor's equity results in a surplus after deducting the exemption."  *Id.* at p. 5 (citing *In re Vizentinis*, 175 B.R. 824 (Bankr. E.D.N.Y. 1994).  With respect to the amount of that exemption, Debtors assert that "[b]ased on the language of the statute, as interpreted by the Supreme Court in *Owen v. Owen*, 500 U.S. 305 (1991), Section 522(f) does not limit a debtor to the exemption claimed, if any, pursuant to Section 522(1) in Schedule C for purposes of the calculation under Section 522(f)(2); rather, the debtor is entitled to use an exemption in the amount corresponding to the amount to which the debtor would have been entitled under Section 522(b) for purposes of the calculation."  *Id.* at p. 5 (citing *In re Scannell*, 453 B.R. 36 (Bankr. D. N.H. 2011)).

---

[7] Case No. 12-77005-ast [dkt item 31]; Case No. 13-70791-ast [dkt item 13].

On May 21, 2013, the Court conducted the Omnibus Hearing, at which Debtors appeared by their common counsel in support of the Motions and presented arguments as outlined above; no party appeared in opposition to any Motion. At the conclusion of the Omnibus Hearing, the Court took these matters under submission, and now issues its ruling.

## **DISCUSSION**

This Decision and Order represents the latest in a series of Decisions and Orders this Court has issued in response to motions to avoid judicial liens that have not complied with the requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Eastern District of New York Local Bankruptcy Rules ("LBR").[8]

In ruling on the instant Motions, this Court must rely on the information provided by Debtors in their Motions because Debtors, as the movants, "bear[] the burden of proof by a preponderance of the evidence on every element of § 522(f)." *In re Armenakis*, 406 B.R. 589, 604 (Bankr. S.D.N.Y. 2009). Even in the absence of an objection by a judicial lien creditor, this Court cannot grant affirmative relief on Debtors' Motions unless Debtors have established a *prima facie* basis for the relief sought.

For the reasons set forth below this Court concludes that Debtors' Motions fail to plead a *prima facie* basis for the relief sought.

## A.    The Federal and New York Homestead Exemptions and their Limitations

When a debtor files for bankruptcy protection, "all legal or equitable interests of the debtor in property" become property of the bankruptcy estate. 11 U.S.C. § 541(a); *see Schwab v.*

---

[8] *See In re Coppola*, 2013 WL 3794098 (Bankr. E.D.N.Y. July 18, 2013) (holding that a debtor claiming New York state exemptions must actually claim a homestead exemption in an amount other than $0.00 to utilize § 522(f), and that a debtor may not claim a New York homestead exemption if the debtor has also claimed a cash exemption, because New York's exemption statute prohibits it); *see also In re Martin*, 2013 WL 3956384 (Bankr. E.D.N.Y. July 25, 2013) (setting forth the test for applying § 522(f) when only one joint tenant owner of real property files bankruptcy); *In re Heaney*, 453 B.R. 42 (Bankr. E.D.N.Y. 2011) (setting forth the test for applying § 522(f) when only one tenant by the entirety owner of the real property files bankruptcy); *Moltisanti*, 2012 WL 5246509 (reaffirming *Heaney*).

*Reilly*, 560 U.S. 770, 130 S .Ct. 2652, 2657 (2010).  To facilitate the debtor's fresh start, Bankruptcy Code § 522 authorizes a consumer debtor to claim certain property as exempt, which "removes the property from the bankruptcy estate, putting it beyond the reach of creditors."  *In re Johnson*, 2011 WL 7637217, at *2 (E.D. Mich. June 14, 2011).  Under § 522(b), "an individual debtor may exempt from property of the estate" property that is exempt under federal law pursuant to § 522(d) or under applicable state law, unless applicable state law only authorizes the debtor to claim the state law exemptions.  11 U.S.C. § 522(b)(1), (2), (3).  In 2011, New York became an opt-in state, which means that Debtors may elect to claim either the federal or the New York exemptions.[9]

The federal homestead exemption provision, § 522(d)(1), provides that a debtor may exempt "[t]he debtor's aggregate interest, not to exceed $22,975[10] in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence."  11 U.S.C. § 522(d)(1).

New York offers a somewhat more generous homestead exemption; C.P.L.R. § 5206(a) provides, in relevant part, that:

> [p]roperty of one of the following types, not exceeding one hundred fifty thousand dollars for the counties of . . . Nassau [or] Suffolk . . . in value above liens and encumbrances, owned and occupied as a principal residence, is exempt from application to the satisfaction of a money judgment . . . .

N.Y. C.P.L.R. § 5206(a) (McKinney 2012).

---

[9] *See* N.Y. C.P.L.R. § 5206; N.Y. Debt & Cred. L. §§ 284, 285 (McKinney 2012); *Moltisanti*, 2012 WL 5246509, at *1; *In re McCarthy*, 2011 WL 5833869, at *2 & n.10 (Bankr. N.D.N.Y. Nov. 18, 2011).

[10] On April 1, 2013, the dollar amount of the federal homestead exemption in § 522(d)(1) was adjusted up from "$21,625" to "$22,975." *See* 11 U.S.C. § 104(a); Revision of Certain Dollar Amounts in the Bankruptcy Code Prescribed Under Section 104(a) of the Code, 78 Fed. Reg. 12089 (Feb. 21, 2013). This higher amount does not apply to any of these cases as they were all filed prior to April 1, 2013. *See* 11 U.S.C. §§ 104(c), 522(a)(2), (b); *In re Wolf*, 248 B.R. 365, 367 (B.A.P. 9th Cir. 2000).

The claiming of either a federal or New York homestead exemption has implications for other exemptions, notably the provisions used by many debtors to exempt cash.  Specifically, Bankruptcy Code § 522(d)(5) states that a debtor may exempt "[t]he debtor's aggregate interest in any property, not to exceed in value $1,225 plus up to $11,500 of any unused amount of the exemption provided under paragraph (1) of this subsection," referring to the homestead exemption under § 522(d)(1).  11 U.S.C. § 522(d)(5).  Therefore, if a debtor claims a federal homestead exemption in excess of $11,475, that exemption will reduce the debtor's "wildcard" exemption under § 522(d)(5) dollar-for-dollar.

New York's exemption provisions are even more restrictive.  New York Debtor and Creditor Law ("DCL") § 283(2) provides that:

> a debtor, who (a) does not elect, claim, or otherwise avail himself of an exemption described in [C.P.L.R. § 5206] . . . may exempt cash in the amount by which ten thousand dollars exceeds the aggregate of his or her exemptions referred to in subdivision one of this section or in the amount of five thousand dollars, whichever amount is less.

N.Y. DEBT. & CRED. L. § 283(2); *see* N.Y. C.P.L.R. § 5205(a)(9).  Therefore, "a debtor utilizing the New York State exemptions may claim either the homestead exemption or the cash exemption, but not both."  *Coppola*, 2013 WL 3794098, at *3.

## B.    Exemptions Must Actually be Claimed

While exemptions in bankruptcy are to be broadly construed, exemptions "are not automatic.  They exist only as a result of the affirmative declaration of the debtor."  *In re Kiproff*, 2006 WL 2381717, at *1 (Bankr. N.D. Ind. Aug. 16, 2006).  Bankruptcy Code § 522(l) requires that "[t]he debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section."  11 U.S.C. § 522(l); *see Schwab*, 130 S. Ct. at 2260.  Bankruptcy Rule 4003(a) adds that "[the] debtor shall list the property claimed as exempt under § 522 of the Code

on the schedule of assets required to be filed by [Bankruptcy] Rule 1007." FED. R. BANKR. P. 4003(a); 1007(a)(1), (b)(1). Thus, to claim property as exempt, a debtor must file Schedule C to list all property claimed as exempt.

By filing Schedule C, the debtor gives notice to all parties in interest of which property, or property interests, the debtor claims as exempt, thereby providing parties in interest with an opportunity to object. *See Schwab*, 130 S. Ct. at 2663 (2010). Once Schedule C has been filed, or, in the case of Amended Schedules, filed and properly served[11], "a party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later." FED. R. BANKR. P. 4003(b)(1).[12] The party objecting to a debtor's claimed exemptions "has the burden of proving that the exemptions are not properly claimed." FED. R. BANKR. P. 4003(c). "If an interested party fails to object within the time allowed, a claimed exemption will exclude the subject property from the estate . . . ." *Schwab*, 130 S. Ct. at 2658; *see* 11 U.S.C. § 522(l); *Taylor v. Freeland & Kronz*, 503 U.S. 638, 642-643 (1992).

Importantly, § 522(b) and (d) are each permissive ("an individual debtor *may* exempt from property of the estate"; "[t]he following property *may* be exempted"); therefore, debtors are permitted, but not required, to file a Schedule C to claim exemptions. 11 U.S.C. § 522(b), (d)

---

[11]*See* E.D.N.Y. Local Bankruptcy Rule 1009-1(b), which requires that amended schedules be served on "(i) the United States trustee; (ii) the trustee; (iii) all creditors who were added or deleted; and (iv) any other party affected thereby. If the amendment affects claimed exemptions, the amending party must also serve all creditors." E.D.N.Y. LBR 1009-1(b). LBR 1007-1(a) adds that an amendment to the Schedules "shall not be effective until proof of service in accordance with subdivision (b) of this rule has been filed." E.D.N.Y. LBR 1007-1(a).

[12] In determining whether to object to a debtor's claimed exemption, the case trustee is to consider three entries on Schedule C: "the description of the [property] in which [the debtor] claimed the exempt interests; the Code provisions governing the claimed exemptions; **and the amounts [the debtor] listed in the column titled 'value of claimed exemption**.'" *Schwab*, 130 S .Ct. at 2663 (2010) (emphasis added).

(emphasis added).  If a debtor wants to claim property as exempt, however, the plain language of § 522(l) mandates that "[t]he debtor *shall* file a list of property that the debtor claims as exempt." 11 U.S.C. § 522(l).  Thus, while the decision whether to claim an exemption is left to the debtor, if he or she chooses to claim an exemption, he or she must file Schedule C.

## C.      Statutory Analysis of § 522(f)

To protect a debtor's claimed exemption in his or her principal residence, § 522(f) authorizes a debtor to:

> avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien **impairs an exemption to which the debtor would have been entitled** under subsection (b) of this section, if such lien is --
>
> (A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5) . . . . [13]

11 U.S.C. § 522(f)(1)(A) (emphasis added); *see Moltisanti*, 2012 WL 5246509, at *3.  Section 522(f)(2)(A) provides a statutory formula for determining whether a judicial lien "impairs an exemption to which the debtor would have been entitled" and provides that:

> For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of--
>
> (i) the lien;
>
> (ii) all other liens on the property; and
>
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
>
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

---

[13] "The term 'judicial lien' means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding."  11 U.S.C. § 101(36). Generally, a "judicial lien" is a judgment obtained by a creditor who records the judgment in the county land records where the debtor's principal residence is located. *See* N.Y. C.P.L.R. § 5203(a); David Gray Carlson, *Critique of Money Judgment Part One: Liens on New York Real Property*, 82 St. John's L. Rev. 1291, 1303-1314 (2008).

11 U.S.C. § 522(f)(2)(A).[14]   Therefore, "[u]nder § 522(f)(1)(A) and (2), the debtor may avoid the fixing of a judicial lien unless there is sufficient equity in the residence to satisfy all consensual and non-avoidable liens and to satisfy the full amount of the debtor's homestead exemption as set either in § 522(d)(1) or in applicable state law." *Moltisanti*, 2012 WL 5246509, at *3.

Procedurally, a § 522(f) motion must "identify[] the property subject to the judicial lien [and] . . . provide information concerning the value of the property, the amount due on account of all liens against it, and the amount of the exemption claimed by the debtor." *Kiproff*, 2006 WL 2381717, at *1; *see* E.D.N.Y. LBR 9013-1(g).[15]   To state a claim for relief under § 522(f)(1)(A), the debtor must establish four basic elements:

> First, there must be an exemption to which the debtor "would have been entitled under subsection (b) of this section." . . . Second, the property must be listed on the debtor's schedules and claimed as exempt. Third, the lien must impair that exemption. Fourth, the lien must be . . . a judicial lien.

*In re Goswami*, 304 B.R. 386, 390-91 (B.A.P. 9th Cir. 2003) (quoting *In re Mohring*, 142 B.R. 389, 392 (Bankr. E.D. Cal. 1992), *aff'd*, 24 F.3d 247 (9th Cir. 1994) (table)).   Thus, at a minimum, a § 522(f) motion must accurately state the amount (if any) of the homestead exemption actually claimed by the debtor.   Because neither of the pending Motions correctly

---

[14] As discussed below, § 522(f)(A)(2) was amended in 1994 to clarify that a debtor may claim a homestead exemption in his or her principal residence even though there is no equity in the property above non-avoidable liens as of the petition date. *See* H.R. REP. 103-835 (1994), 1994 U.S.C.C.A.N. 3340, 3361-63, *available at* 1994 WL 562232 at *52-54; 4 COLLIER ON BANKRUPTCY P 522.11[3] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

[15] In this district, a motion seeking relief under § 522(f) must be supported by an affidavit or affirmation stating:

> (i) the date of filing of the bankruptcy petition;
> (ii) a description of the judgments to be avoided (*e.g.,* name of judgment holder, date and place of docketing of the judgment, amount of judgment);
> (iii) the amount of each lien on the property (including all mortgages); and
> (iv) the amount of the exemption claimed by the debtor.

E.D.N.Y. LBR 9013-1(g).

states the amount of the homestead exemption (if any) actually claimed by Debtors, the Motions must be denied on that ground alone.

### 1. §522(f) is Ambiguous

Turning to the substance of the Motions, the principal issue of contention raised in the Brief and at the Omnibus Hearing is the meaning of the phrase "impairs an exemption to which the debtor would have been entitled" in § 522(f)(1)(A). In determining the precise meaning of this provision, "the Court must begin its inquiry by looking to the language of the statute itself." *In re Phillips*, 485 B.R. 53, 56 (Bankr. E.D.N.Y. 2012) (citing, *inter alia*, *Lamie v. United States Trustee*, 540 U.S. 526, 534, (2004); *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989), and analyzing exemption provision § 522(d)(11)(D)). As this Court noted in *Phillips*, "[c]ourts are required to apply the plain meaning of a statute, unless the statute is ambiguous or applying the unambiguous plain meaning would yield an absurd result." *Id.* (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, Nat'l Ass'n*, 530 U.S. 1, 6 (2000)). "Statutory language is ambiguous if it is susceptible to two or more reasonable meanings." *Id.* (citing *In re Med Diversified, Inc.*, 461 F.3d 251, 255 (2d Cir. 2006)). Thus, "[i]n determining plainness or ambiguity, courts are directed to look 'to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *Id.* (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

The plain language of § 522(f)(1)(A) states that the debtor may avoid a judicial lien fixed against the debtor's principal residence to the extent the lien "impairs an exemption to which the debtor would have been entitled . . . ." 11 U.S.C. § 522(f)(1)(A). Debtors assert that this phrase modifies the reference to the impairment of the debtor's exemption such that a debtor does not need to claim a homestead exemption to invoke § 522(f); in their Briefs, Debtors cite to several

cases that have adopted this position (see discussion below). Other courts have recognized, however, that this phrase is susceptible to a second, equally plausible meaning: "an exemption to which [the debtor] would have been entitled *but for the lien itself*", referring to the judicial lien sought to be avoided. *Church*, 2009 WL 3754399, at *2 (Bankr. D. Mass. Nov. 3, 2009) (quoting *Owen v. Owen*, 500 U.S. 305, 311 (1991)) (emphasis in original). Many courts on both sides of this split have found § 522(f)(1)(A) to be unambiguous on its face, further demonstrating that the statute is, in fact, ambiguous. *Compare Botkin v. DuPont Cmty. Credit Union*, 650 F.3d 396, 401 (4th Cir. 2011), *with In re Wallace*, 453 B.R. 78, 82 (Bankr. W.D.N.Y. 2011). This Court concludes that the phrase "impairs an exemption to which the debtor would have been entitled" in § 522(f)(1)(A) is ambiguous on its face, because it is susceptible to two plausible meanings.

When a statute is determined to be ambiguous, the court "may utilize canons of statutory construction to help resolve any ambiguity." *Phillips*, 485 B.R. at 56 (citing, *inter alia*, *United States v. Colasuonno*, 697 F.3d 164, 173 (2d Cir. 2012)). Here, however, canons of statutory interpretation are not particularly helpful; the surrounding text does not help to explain the meaning of the phrase "impairs an exemption to which the debtor would have been entitled," nor is this phrase part of a series from which its meaning can be surmised, nor is there a more specific provision of the statute that might control the interpretation of this phrase. *See id.* at 59-60.

### 2.    *The Legislative History of § 522(f)(1)(A) Supports Requiring Debtors to Claim a Homestead Exemption*

"Where plain meaning and the rules of statutory construction fail to resolve the ambiguity in a given statute, courts may also look to legislative history in determining legislative intent." *Id* at 60. Here, the legislative history provides guidance. In 1994, Congress amended § 522(f) to

add, *inter alia*, the phrase "impairs an exemption to which the debtor would have been entitled. . . ." *See Wallace*, 453 B.R. at 83; H.R. REP. 103-835 (1994), 1994 U.S.C.C.A.N. 3340, 3361-63, *available at* 1994 WL 562232 at *52-54 (the "House Report"). Specifically, the legislative history states that this phrase was adopted to expand the applicability of § 522(f) to address what Congress viewed as contrary decisions in the case law that had either limited or prohibited debtors from raising § 522(f) when there was either little or no equity in the principal residence. *See* House Report, 1994 U.S.C.C.A.N. 3340, 3361-63 (discussing cases).

The legislative history of the 1994 amendments to § 522(f) cites favorably to the United States Supreme Court's decision in *Owen v. Owen*, in which the Court interpreted the pre-amendment version of § 522(f) as allowing a debtor to avoid a $160,000.00 judicial lien fixed against the debtor's principal residence, a condominium valued at $135,000.00, even though there was no equity in the property. 500 U.S. 305, 306-07 (1991). In *Owen*, it was undisputed that the debtor "filed for bankruptcy under Chapter 7 of the Code, and claimed a homestead exemption in his . . . condominium." *Id.* at 307. The question before the Court in *Owen* was whether the debtor could avoid the judicial lien under § 522(f) even though Florida law (which controlled) held that a debtor could not avoid a judicial lien that had fixed to a condominium before Florida had changed its exemption law to cover condominiums (which previously had not been exemptible). *Id.* at 307. In that context, the Supreme Court held in *Owen* that:

> [t]o determine the application of § 522(f) [courts] ask not whether the lien impairs an exemption to which the debtor is in fact entitled, but whether it impairs an exemption to which he would have been entitled but for the lien itself.
>
> As the preceding [emphasized] words suggest, this reading is more consonant with the text of § 522(f) – which establishes as the baseline, against which impairment is to be measured, not an exemption to which the debtor "is entitled," but one to which he *would have been* entitled."

*Id.* at 310-11 (emphasis in original). While the Supreme Court acknowledged that this approach is "hypothetical, rather than actual," the "hypothetical" analysis in which the Court engaged related to whether there was any exemptible interest in the principal residence, a condominium, not whether the exemption claim itself was hypothetical because the debtor had failed to claim an exemption at all. *See id.*; *see also Swaim v. Kleven*, 2004 WL 3550144 at *2 (N.D. Ind. Aug. 27, 2004) (discussing *Owen*); *Church*, 2009 WL 3754399, at *2.

### 3. Case Law Supports Requiring Debtors to Actually Claim a Homestead Exemption

Since the enactment of the 1994 amendments to § 522(f), a split of authority has arisen regarding whether a debtor must claim a homestead exemption to avoid a judicial lien.[16] Having considered the analysis on both sides, this Court concludes that a debtor must actually claim a homestead exemption on Schedule C in an amount certain to avoid a judicial lien under § 522(f).

In *In re Wallace*, the Bankruptcy Court for the Western District of New York, applying New York's exemption law, has addressed the issue raised in the instant cases and has concluded that "a New York State debtor must actually claim a homestead exemption under Section 5206 and Section 283(2) on Schedule C in order to utilize the avoidance provisions of Section 522(f) . . . ." *Wallace*, 453 B.R. at 82; *see In re Church*, 2009 WL 3754399, at *1 (citing cases).

---

[16] In *Coppola*, this Court recognized the split in the case law and held that "the Bankruptcy Code and Bankruptcy Rules require a debtor to actually claim a homestead exemption in her principal residence in order to avoid judicial liens under § 522(f)." *Coppola*, 2013 WL 3794098, at *2. Numerous other courts have reached the same conclusion. *See, e.g., Swaim v. Kleven*, 2004 WL 3550144, at *2 (N.D. Ind. Aug. 27, 2004); *In re Wallace*, 453 B.R. 78, 82-83 (Bankr. W.D.N.Y. 2011); *In re Church*, 2009 WL 3754399, at *1 (Bankr. D. Mass. Nov. 3, 2009); *In re Kiproff*, 2006 WL 2381717, at *1 (Bankr. N.D. Ind. Aug. 16, 2006); *In re Coverstone*, 2006 WL 2136032, at *1 (Bankr. N.D. Ind. July 27, 2006); *In re Bartlett*, 326 B.R. 436, 438 (Bankr. N.D. Ill. 2005); *In re Berryhill*, 254 B.R. 242, 244 (Bankr. N.D. Ind. 2000); *In re Mukhi*, 246 B.R. 859, 862, 865 (Bankr. N.D. Ill. 2000); *In re Wall*, 127 B.R. 353, 356 (Bankr. E.D. Va. 1991); *In re Rosol*, 114 B.R. 560, 562 (Bankr. N.D. Ill. 1989). Other courts have reached the opposite conclusion and either expressly or impliedly held that a debtor is not required to actually claim a homestead exemption to utilize § 522(f). *See, e.g., Botkin v. DuPont Cmty. Credit Union*, 650 F.3d 396, 401 (4th Cir. 2011); *In re Brugueras*, 2012 WL 6055603, at * 3-4 (Bankr. E.D. Va. Dec. 6, 2012); *In re Morais*, 2009 WL 3054059, at *4 (Bankr. D. Mass. Sept. 18, 2009); *In re Nichol*, 2009 WL 412890, at *3 (Bankr. N.D. Ill. Feb. 6, 2009); *In re Powell*, 399 B.R. 190, 195 (Bankr. W.D. Tex. 2008); *In re Moreno*, 352 B.R. 455, 459-460 (Bankr. N.D. Ill. 2006); *In re W.K. Montgomery*, 80 B.R. 385, (Bankr. W.D. Tex. 1987); *In re Johnson*, 53 B.R. 919, 922 (Bankr. N.D. Ill. 1985); *In re Yamamoto*, 21 B.R. 58, 59 (Bankr. D. Haw. 1982).

In *Wallace*, the Chapter 7 debtors sought to avoid more than $34,000 in judicial liens on their principal residence, which they scheduled as having a fair market value of $44,000.00, subject to an unpaid mortgage balance of $69,074.18. *Id.* at 79. The debtors sought to avoid these judicial liens under N.Y. C.P.L.R. § 5206 even though they had not claimed a homestead exemption, because there was no equity in the property to which the liens could attach. *Id.* at 79-80. In rejecting the debtors' § 522(f) motion, the court in *Wallace* noted that the plain language of § 522(f)(1) and (f)(2)(A) requires a specific exemption amount in order to calculate whether a judicial lien may be avoided and that nothing in the legislative history of the 1994 amendments to § 522(f) supports a contrary result. *Id.* at 82-83 (discussing the legislative history). The *Wallace* court further recognized that under the New York State exemptions, the debtors would have to choose either a homestead exemption or a cash exemption, and could not use a hypothetical exemption in their § 522(f) motion to avoid this exemption limitation. *Id.* at 83. Finally, the court noted that while exemptions are to be liberally construed, that judicial doctrine does not override the plain language or the legislative intent of § 522(f). *Id.* at 84; *see also Phillips*, 485 B.R. at 60.[17]

The only circuit court to have considered this issue has ruled the other way. In *Botkin v. DuPont Community Credit Union*, the United States Court of Appeals for the Fourth Circuit concluded that a debtor can utilize § 522(f) without actually claiming a homestead exemption on Schedule C. 650 F.3d 396, 400 (4th Cir. 2011); *see In re Scannell*, 453 B.R. 36, 40-41 (Bankr.

---

[17] For the reasons set forth above, the court's conclusion in *Wallace* is equally applicable when a debtor claims the federal exemptions; even though the federal homestead exemption is not an either-or choice as under New York law, as noted above, a claimed federal homestead exemption still limits the availability of other federal exemptions. Thus, a debtor must actually claim the homestead exemption under either the federal or state exemptions so that parties in interest can determine if the debtor is actually entitled to such exemption.

D.N.H. 2011) (citing cases).[18]  In *Botkin*, the Chapter 7 debtor was entitled under applicable state law to claim as exempt up to $5,500 in property, inclusive of cash and any equity in the debtor's homestead.  *Id.* at 397.  Inexplicably, the debtor claimed only $2,723 of the $5,500 to exempt an anticipated tax refund, and failed to claim any homestead exemption.  *Id.*  The debtor then brought a § 522(f) motion, which the bankruptcy court denied because the debtor had not claimed an exemption in her principal residence.  *Id.* at 397-398.  On appeal, the district court reversed the bankruptcy court, holding that the debtor was not required to actually claim a homestead exemption to utilize § 522(f), and the Fourth Circuit affirmed and held that "the Code plainly provides that debtors need not claim an exemption as a precondition of avoiding a lien that the debtor contends impairs that exemption."  *Id.* at 398, 400.

In reaching this conclusion, the Fourth Circuit relied heavily on the Supreme Court's decision in *Owen* in concluding that "§ 522's focus [is] not on any actual claim of exemption, but rather on the hypothetical exemption that the debtor would have been entitled to in the absence of the lien."  *Id.* at 400.  In a footnote, the Fourth Circuit acknowledges that the debtor in *Owen* actually did claim a homestead exemption on his Schedules; nevertheless, the Fourth Circuit in *Botkin* broadly read *Owen* as waiving § 522(l)'s requirement that a debtor actually claim a homestead exemption.  *Id.* at 400 & n.3.

This Court respectfully disagrees.  First, it appears that *Botkin* and similar decisions read *Owen's* holding far too broadly.  As noted above, the narrow issue before the Court in *Owen* was

---

[18] In *Scannell*, the debtor actually claimed a $100,000.00 New Hampshire state homestead exemption in his principal residence, which was less than the maximum state homestead exemption of $500,000.00.  *Scannell*, 453 B.R. at 37-38. Applying the debtor's actually claimed exemption, the judicial lien at issue would have been only partially avoided.  *Id.* at 38. The *Scannell* court adopted the same approach taken in *Botkin*; it treated § 522(f) and § 522(l) as wholly distinct, and permitted the debtor to fully avoid the judicial lien based upon the statutory maximum homestead exemption.  *Id.* at 40-42. The decision in *Scannell* makes no mention of whether applying the maximum state homestead exemption would implicate other exemptions. For the reasons set forth herein, this Court respectfully disagrees.

whether a debtor could avoid a judicial lien under § 522(f) using a Florida exemption statute that was adopted by the legislature after the lien fixed. The Supreme Court never addressed substantively whether a debtor is, or is not, required to actually claim a homestead exemption to utilize § 522(f); in fact, the debtor in *Owen* actually did claim a homestead exemption. *Owen*, 500 U.S. at 306-08. Nothing in the language of *Owen* or in the legislative history to the 1994 amendments even addresses § 522(l)'s requirement that a debtor must actually claim a homestead exemption, let alone an express waiver of such requirement, as some courts have found. In fact, the language in *Owen* cited favorably in *Botkin* actually supports the contrary conclusion that the "proper question to ask is 'whether it impairs an exemption to which [the debtor] would have been entitled *but for the lien itself*'" not but for the debtor's failure to claim an exemption. *Church*, 2009 WL 3754399, at *2 (quoting *Owen*, 500 U.S. at 310-11) (emphasis in original).

Second, while the language of § 522(f)(1)(A) is ambiguous, the requirement of § 522(l) is not. As noted above, to claim certain property as exempt and thereby remove it from the estate, the debtor must file Schedule C listing all property claimed as exempt. 11 U.S.C. § 522(l); FED. R. BANKR. P. 1001, 1007, 4003(a). Debtors herein assert that § 522(l) does not limit the applicability of § 522(f)(1)(A) to instances where the debtor has actually claimed a homestead exemption because § 522(f)(1)(A) does not expressly require compliance with § 522(l). This assertion is unfounded. Section 522(l) is a generally applicable provision that is contained within the same section of the Bankruptcy Code on exemptions as the judicial lien avoidance provision in § 522(f). Compliance with § 522(l) is mandatory for any debtor to claim property as exempt regardless of whether the debtor chooses to seek to avoid judicial liens pursuant to § 522(f)(1)(A) or not. Additionally, Eastern District of New York Local Bankruptcy Rule 9013-

1(g) requires that a § 522(f) motion must state, *inter alia*, "the amount of the exemption claimed by the debtor." E.D.N.Y. LBR 9013-1(g)(iv). It is simply not possible for creditors, the trustee, or the Court to determine whether a debtor is entitled to relief under § 522(f) unless the debtor files Schedule C identifying whether the debtor has elected the federal or state exemptions and listing the property or property interests claimed as exempt.

Finally, as discussed below, the approach adopted in *Botkin* is unworkable because it does not provide creditors, the trustee, or the Court with any basis for determining whether a debtor who utilizes § 522(f) based upon a hypothetical or shadow exemption is actually entitled to the relief sought.

Accordingly, this Court concludes that the phrase "impairs an exemption to which the debtor would have been entitled" in § 522(f)(1)(A) does not waive the requirement in § 522(l) that the debtor must actually claim an exemption, and a debtor may not utilize § 522(f) based solely upon a hypothetical or shadow exemption that the debtor has not actually claimed on Schedule C.

**D.      Practical Considerations Require that the Debtor
           Actually Claim a Homestead Exemption**

In the Brief, Debtors argue that they should be allowed to avoid judicial liens on their respective principal residences using a hypothetical exemption. However, a recent decision by this Court highlights the potential pitfalls of using a hypothetical or shadow exemption.

In *In re Coppola*, the Chapter 7 debtor filed a § 522(f) motion but failed to claim a homestead exemption in the principal residence. *Coppola*, 2013 WL 3794098, at *1. On his original Schedule C, the debtor had claimed the New York State cash exemption under DCL § 283(2) to exempt an anticipated $5,000 tax refund. *Id.* at * 1. Following a hearing on the § 522(f) motion, the debtor filed an Amended Schedule C on which the debtor claimed both a

"0.00" homestead exemption in his principal residence and the $5,000 cash exemption under DCL § 283(2).  *Id.* at *1.  Although no judicial lien creditor objected, this Court denied the motion.  First, for the reasons set forth above, this Court concluded in *Coppola* that "the Bankruptcy Code and Bankruptcy Rules require a debtor to actually claim a homestead exemption in her principal residence in order to avoid judicial liens under § 522(f)."  *Coppola*, 2013 WL 3794098, at *2 (citing, *inter alia*, *Schwab*, 130 S. Ct. at 2660).  The Court next found that "a $0.00 homestead exemption is tantamount to not claiming an exemption in the Property, as a $0.00 interest is not an interest that can be impaired."  *Id.* at *3 (citing cases).  The Court then turned to the exemptions the debtor had claimed on his Amended Schedule C, which included both a homestead exemption and a cash exemption.  *Id.*  As noted above, the plain language of DCL § 283(2) prohibits a debtor who elects the New York exemptions from claiming both a homestead exemption (regardless of the amount claimed) and a cash exemption. *Id.*  (citing cases).  Accordingly, the Court denied the debtor's § 522(f) motion on this alternative ground as well, without prejudice to the debtor amending his Schedules and filing a new § 522(f) motion.  *Id.*

As *Coppola* demonstrates, allowing a debtor to utilize § 522(f) without also requiring the debtor to actually claim a homestead exemption can create a situation where a debtor could avoid a judicial lien based upon a "second, shadow set of exemptions" that (as in *Coppola*) may be completely inconsistent with the applicable exemption law.  *Id.* at *2.  The New York State legislature has authorized a debtor residing in New York to claim a homestead exemption or a cash exemption, but not both.  *See Wallace*, 453 B.R. at 83.  Similarly, Congress has expressly made a portion of the "wildcard" exemption under § 522(d)(5) contingent on whether a debtor claims a federal homestead exemption under § 522(d)(1) above a certain amount.

Because the homestead exemptions under both federal and New York law limit the availability of other exemptions, a debtor must actually claim a homestead exemption in a specific dollar amount so that creditors and the trustee have an opportunity to review that exemption and so that, in the context of a § 522(f) motion, the Court can determine whether the debtor is entitled to the relief sought.

### E.    Debtors Must Actually Claim a Homestead Exemption in an Amount Certain

In their Brief and at the Omnibus Hearing, Debtors argued that they should not be required to actually claim a homestead exemption, particularly if there is no equity in the principal residence.  Alternatively, Debtors ask that they be permitted to claim a $0.00 homestead exemption.  There are numerous reasons why this Court must deny such a request.

First, a debtor must claim any exemption in a specific dollar amount because (1) a $0.00 exemption is "tantamount to no exemption at all," and (2) a debtor only exempts the equity in his or her principal residence to the extent of the amount of the homestead exemption actually claimed.  *Coppola*, 2013 WL 3794098, at *2.[19]  The flaw in the Debtors' $0.00 exemption argument is demonstrated by the fact that these Debtors (or any other debtors to this Court's knowledge) have not sought to claim a $0.00 exemption in cash or any other property of value, precisely because a $0.00 exemption represents nothing.

Second, this Court recognizes that there are strategic reasons why a debtor would claim a modest homestead exemption in order to avail himself or herself of other exemptions, and there is nothing inherently wrong with such exemption planning.  *See Wallace*, 453 B.R. at 82-83; *see*

---

[19] *See In re Soost*, 262 B.R. 68, 70, 74 (B.A.P. 8th Cir. 2001) (holding that "the debtor's $1.00 exemption effectively exempted an interest in the subject real estate equal to $1.00 in value, nothing more."); *Berryhill*, 254 B.R. at 243-44 (holding that "before a lien against property may be avoided, it is entirely consistent with the legislative purpose to require that a debtor have a right to the exemption it seeks to protect *and* that the debtor actually allocate some portion of its available exemptions to that property.  To do otherwise would permit the debtor to gain all the benefits of § 522(f) without having to bear the consequences which necessarily flow from having allocated a part of its limited exemptions to the property.").

*also In re Sueng Oh Cho*, 2012 WL 1424508, at *3 (Bankr. E.D.N.Y. Apr. 24, 2012). However, as *Coppola* demonstrates, a contrary holding to the one issued herein could permit a debtor to avoid a judicial lien using a homestead exemption to which the debtor is not entitled. Such a result would be both inequitable and contrary to express limitations in both the federal and New York exemption statutes. This Court is charged with applying the exemption statutes as enacted by Congress and the New York State legislature, and cannot grant a debtor affirmative relief that is limited or expressly prohibited by applicable law. Therefore, Debtors may not use a hypothetical $0.00 homestead exemption to get around the sometimes difficult choices imposed by the federal and New York exemption statutes.

Third, even if there is presently no equity in a debtor's principal residence, the debtor must still claim a homestead exemption in a dollar amount certain, even if in a *de minimis* amount, because that homestead exemption preserves any future increase in equity in the principal residence for the debtor, rather than that increase in equity going to the judicial lien creditor. *See Wallace*, 453 B.R. at 83; *In re Berryhill*, 254 B.R. 242, 244 (Bankr. N.D. Ind. 2000). A debtor may not gain the economic benefits of § 522(f) without actually claiming a homestead exemption.

Fourth, debtors who reside in New York State have no need for a shadow set of exemptions, because they already have two options: state or federal exemptions. If a debtor's principal residence presently has little or no net equity, then (all other things being equal) that debtor may elect to claim the federal exemptions, which allow the debtor to claim a homestead exemption plus a wildcard exemption to exempt some cash. Alternatively, a debtor whose principal residence has substantial equity may elect to claim the New York exemptions, which provide a much larger homestead exemption.

Fifth, filing a one-page Schedule C listing all property that the debtor wants to exempt from creditors is not an "onerous" requirement. *Church*, 2009 WL 3754399, at *2. Regardless of whether a debtor seeks relief under § 522(f) or not, any debtor who wants to claim property as exempt must file Schedule C and list the property claimed as exempt. 11 U.S.C. § 522(l); FED. R. BANKR. P. 4003(a). This Court rejects the view that it is burdensome to require that Debtors include on their respective Schedule Cs a one-line homestead exemption to claim the equity in their principal residence as exempt, as this is precisely what § 522(l) requires.

Finally, there are enormous practical problems with allowing a debtor to use a hypothetical or shadow homestead exemption in a § 522(f) analysis, which neither these Debtors, nor the cases they cite, even attempt to address. Section 522(f)(2)(A) sets forth a mathematical formula for determining whether the debtor's homestead exemption is impaired. *See Wallace*, 453 B.R. at 82. Applying this mathematical formula to an unclaimed, shadow exemption raises numerous questions. For example, what amount should a court assign to a shadow exemption? Is it the statutory maximum exemption or only the amount necessary to exempt all the equity in the residence? Which exemptions – state or federal – should the court apply in ruling on a § 522(f) motion, the exemption asserted in the motion, or the exemption statute listed by the debtor on Schedule C? In the pending Schneider Motion, the Schneiders claimed a federal homestead exemption in their as-yet un-served Amended Schedule C, but asserted a New York homestead exemption in the § 522(f) Motion. Which one is the Court to apply under the Debtors' proposed hypothetical analysis, particularly given that § 522(b)(1) appears to prohibit debtors from asserting both state and federal exemptions? *See Coppola*, 2013 WL 3794098, at *2. Along those same lines, what if, as happened in *Coppola*, the debtor has elected the New York exemptions and claimed a cash exemption, thereby precluding the debtor from claiming a

homestead exemption – can a court grant a debtor a homestead exemption to which the debtor is not lawfully entitled under DCL § 283(2) for the purposes of a § 522(f) motion?   Further, how do parties in interest object to a shadow exemption that has not actually been claimed?  When does that objection deadline begin and end if the shadow homestead exemption is not actually listed on Schedule C?  And what if the debtor has not filed a Schedule C at all and has not claimed any property as exempt? Debtors' position would not require a debtor to claim any exemptions as a precondition for invoking § 522(f), but how can a court, in reviewing a § 522(f) motion, determine the homestead exemption to be used if the debtor has apparently waived all exemptions?  This Court will not engage in such a speculative analysis, particularly in light of the statutory mandate in § 522(l) that a debtor "shall" list all property claimed as exemption on Schedule C.

Resorting to a shadow set of hypothetical exemptions should not be a substitute for proper (and appropriate) bankruptcy exemption planning.  Debtors and their counsel should analyze the debtor's financial conditions prior to filing bankruptcy to determine which exemption statute and which specific exemptions provide the most economic benefit to the debtor.  Further, debtors and their counsel should continue to monitor the debtors' exemptions during the pendency of the bankruptcy case, particularly prior to filing a § 522(f) motion.  At that time, a debtor may need to amend Schedule C in order to obtain relief under § 522(f); however, this is no impediment because a debtor may amend his or her schedules as a right at any time during the case.  *See* FED. R. BANKR. P. 1009(a); E.D.N.Y. LBR 1009-1.  The Court recognizes that many debtors and their attorneys already undertake the foregoing analysis.  Nevertheless, debtors and their counsel are reminded that exemptions in bankruptcy are a right that must be

affirmatively exercised within the bounds of the applicable exemption statute as enacted by Congress and the New York State legislature.

## CONCLUSION

In both of the pending cases, the § 522(f) Motions should be denied.

The Schneider's Motion should be denied for two reasons.  First, because the Schneiders failed to file proof of service of their Amended Schedule C, that Amended Schedule is not effective to claim a homestead exemption. Therefore the Schneiders currently have not actually claimed a homestead exemption in the Schneider Property.  Second, even if the Schneiders had properly served their Amended Schedule C, this Court would not grant them affirmative relief because the Schneider Motion fails to properly plead the amount of the homestead exemption actually claimed by the Schneiders.  The Schneider Motion incorrectly asserts a $300,000.00 New York homestead exemption, whereas the Schneiders' filed (but not served) Amended Schedule C lists a $100.00 federal homestead exemption.  If the Schneiders claim the federal exemptions, they cannot have a New York homestead exemption that is impaired.

Similarly, the Kurbis Motion should be denied; although it asserts that the Kurbises are entitled to a $43,250.00 combined federal homestead exemption, in fact, the Kurbises actually claimed only a $100.00 combined federal homestead exemption on Schedule C.  Thus, the Kurbises have not plead a *prima facie* basis for the relief sought.

Accordingly, it is hereby

**ORDERED**, that the Schneider Motion is denied without prejudice to the Schneiders filing and serving, within **fourteen (14) days** from the date of entry of this Decision and Order, Amended Schedules and a further amended § 522(f) motion that correctly states the amount of

the homestead exemption actually claimed by the Schneiders on their Amended Schedule C, as required by LBR 9013-1(g); and it is further

 **ORDERED**, that the Kurbis Motion is denied without prejudice to the Kurbises filing and serving an amended § 522(f) motion, within **<u>fourteen (14) days</u>** from the date of entry of this Decision and Order, that correctly states the amount of the homestead exemption actually claimed by the Kurbises on their Schedule C, as required by LBR 9013-1(g); and it is further

 **ORDERED**, that if either the Schneiders or the Kurbises fail to file and serve Amended Schedules and/or amended § 522(f) motions as set forth above, those Debtors' pending Motion(s) will be deemed denied with prejudice.



**Dated: November 8, 2013**
  **Central Islip, New York**

             **Alan S. Trust**
           **United States Bankruptcy Judge**